HANSEN v. PRATT

5-3871                                             402 S. W. 2d 108

5-3871

Opinion delivered May 2, 1966

*Hall, Purcell, Boswell & Tucker,* for appellant.

*Fred E. Briner,* for appellee.

CARLETON HARRIS, Chief Justice. Appellees, Lucille Slack Pratt, W. N. Slack, and Earnestine Slack, his wife, and appellants, Richard G. Hansen and wife, owned adjoining lands fronting on Interstate Highway 30 in Benton, Arkansas. Appellees acquired title to the lands by inheritance from their parents, and have held title since 1955. Mr. and Mrs. Hansen acquired their property by purchase on March 13, 1961, and thereafter constructed their home thereon. Hereafter, for convenience, appellees' lands will be referred to as the Slack property, and the lands belonging to appellants will be referred to as the Hansen property. Subsequent to the construction of the home, appellees, who are non-residents of this state, instituted suit against Hansen and wife, alleging that appellants had constructed a concrete driveway, which overlapped on to the Slack property for a distance of 46 feet, just north of the highway, and they asked that appellants be required to remove the encroachment. On trial, the court found the true property line to be in accordance with a survey offered by Donald Huchingson, County Surveyor, and held that the Hansen driveway did encroach upon the Slack property. The court directed that this encroachment be removed within 60 days. From the decree so entered, appellants bring this appeal.

First, let it be said that there is no dispute but that the survey introduced by Huchingson was correct. The surveyor found that along the highway (the widest point) the encroachment amounted to 44½ feet, and as the property line continued north, the encroachment narrowed to something over 26 feet. Hansen had built the driveway from the highway to his home, a distance of over 410 feet.

For reversal, it is first argued that appellees and Albert Thomas, a prior owner of the Hansen property, had agreed, between 1950 and 1954, upon a boundary line between the two properties; that in accordance with the idea that a street would be constructed in the future, half of the land to come from the Slack property, and half from the Hansen property for this purpose, the fence was moved 15 feet to the west. This street was never constructed. Appellants' basis for the contention of the agreed boundary line is an alleged oral agreement between Thomas and Frank Brown, a neighbor, who formerly had leased the Slack lands,[1] and who, according to appellants, was a "representative" of appellees. Ernest Darnell, Jr., who acquired the land from Thomas (and subsequently conveyed to Hansen) testified that, during the time he owned the land, August, 1954, until March, 1961, he considered the west line of the property to be 15 feet east of the fence, and that he claimed to that line. No claim of adverse possession can be established, however (and, in fact, is not really argued), because admittedly, the land was wild and unimproved, and had never been farmed, nor had improvements been placed upon it. Furthermore, there is no evidence at all that Brown was an agent of appellees, or had any authority to make any agreements whatever on behalf of the Slacks. Hansen's mother-in-law also testified that Brown told her that the property line was located 15 feet east of the fence, which Brown denied. At any rate, as stated, the record does not reflect any authority in Brown to bind appellees in any manner, even if the remainder of the proof on this point had been sufficient.

There is likewise no merit in the second contention advanced by appellants, such contention being that this boundary line was established by acquiescence. Here, again, appellants are dependent upon the authority of Brown to act in behalf of appellees, and, in addition, there is no evidence of acts on the part of appellants' predecessors in title that would serve as notice to the

---

[1]Brown used the land for pasture.

Slacks that any claim was being made to any part of the Slack property.

It is next argued that the Slacks are estopped from contesting the boundary line asserted by appellants, because the Hansens were permitted to construct the dwelling house and other improvements without objection: Again, appellants mention that they were relying upon the representations of Frank Brown, relative to the true boundary line. We find no merit in this contention. In the first place, there is no evidence that the appellees, non-residents of this state, as previously mentioned, knew that the Hansens were constructing improvements on their (Slack's) lands. What is perhaps more important is that appellants made their purchase with full notice that the record title to the contested strip was in the Slacks, for before making the purchase in 1961, Hansen employed Huchingson to make a survey in order that he might determine correct boundaries; Huchingson (who surveyed the land here in question three times) made the same findings as to the true boundary that has heretofore been set out. Certainly, this fact should have been sufficient to prevent Hansen's reliance upon the alleged statements of the neighbor, Brown.

Finally, appellants contend that a "balancing of equities requires a conveyance of the disputed strip for adequate compensation." Here, it is argued that, because of the great expense involved in removing the concrete driveway, equity should afford appellants the opportunity to purchase the land encroached upon for its reasonable value.[2] The only authority cited is from 11 C.J.S., "Boundaries," Section 75, where it is stated that "Where the improvements are made due to mutual mistake [our emphasis] as to boundaries, equity will require conveyance of the disputed strip for its reasonable value." This is hardly pertinent authority, since the record does not reveal a mutual mistake. Not only

[2]In their answer, appellants asserted that they had spent in the neighborhood of $4,000.00 in constructing the driveway.

that, but Mr. Hansen admitted that he knew (even under his theory of where the proper line was located) that he had encroached several feet over the line. Hansen testified that his wife wanted to put up entrances "with some of those pineapple hootie-ki's on top." He went ahead with this construction, knowing that he was using property not his own, though he said that he thought it only amounted to three feet. A wilful trespasser is hardly in position to assert equitable rights. At any rate, having had his boundary line established by a recognized surveyor, appellant certainly should have contacted appellees before deliberately disregarding the surveyor's findings, and proceeding to construct the driveway.

Affirmed.

Amsler and Bland, J.J., not participating.